UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| PORT MARIGNY, LLC, ET AL. | CIVIL ACTION |
|---|---|
| VERSUS | No.: 17-4727 |
| CITY OF MANDEVILLE, ET AL. | SECTION: "J"(1) |

## ORDER & REASONS

### NATURE OF MOTION AND RELIEF REQUESTED

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 6)** filed by David Ellis, John Keller, Clay Madden, Michael Pulaski, and Lauré Sica, in their official capacities as members of Mandeville City Council (collectively, the "Councilpersons"). Port Marigny, LLC and Pittman Assets, LLC (collectively, the "Plaintiffs") filed an opposition thereto (Rec. Doc. 12) and Councilpersons filed a reply (Rec. Doc. 15). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

This litigation involves a Mandeville City Council decision to deny Plaintiffs' plan to develop a 76-acre tract of land (the "Site")[1] into a neighborhood in Mandeville, Louisiana (commonly

---

[1] From the 1950s to the 1980s, the Site was the location of a manufacturing plant for pre-stressed concrete products. Plaintiff Pittman Assets, LLC purchased the Site in the 1980s and is the current owner.

known as the "Port Marigny project"). (Rec. Doc. 1-1.) In short, Plaintiffs allege that they provided the City with a "tailor-made" proposal for the Site that complied with the Comprehensive Land Use Regulations Ordinance ("CLURO")[2] as well as "multiple other demands made by the City." Despite Plaintiffs' alleged compliance with the requisite local laws, on March 9, 2017, four out of five Councilpersons voted to terminate consideration of the Port Marigny project. Plaintiffs allege that the "decision to terminate the Port Marigny project after nearly two years of deliberation and expense was arbitrary and capricious."

On April 7, 2017, Plaintiffs filed a verified petition in the 22nd Judicial District Court for the Parish of St. Tammany. Plaintiffs named the City of Mandeville and all five Councilpersons in their official capacities as Defendants. Specifically, Plaintiffs seek: judicial review of the Councilpersons' votes along with a judgment that renders the votes null and void and approves of Plaintiffs' proposal; a declaration that the Plaintiffs' proposal satisfied all requirements of the CLURO; a declaration that the CLURO is unconstitutionally vague and ambiguous; damages for violations of federal rights under 42 U.S.C.

---

[2] According to Plaintiffs, the City adopted a Comprehensive Plan, which outlines specific policies for a "vibrant walkable, mixed-use, waterfront development that provides strong fiscal benefits for the City." (Rec. Doc. 1-1 ¶ 9.) It also sets out a policy encouraging "new urbanist design standards." The City Council codified these policies in its Comprehensive Land Use Regulations Ordinance ("CLURO").

§ 1983, namely, unconstitutional taking, due process violations for arbitrary and capricious actions, procedural due process violations, and equal protection violations; damages for unconstitutional taking under state law; and attorneys' fees under 42 U.S.C. § 1988. The City of Mandeville answered the complaint and Councilpersons filed the instant motion to dismiss (Rec. Doc. 6). The motion is now before the Court without oral argument.

## **PARTIES' ARGUMENTS**

In their motion to dismiss, Councilpersons present four arguments. First, Councilpersons argue that all claims against them in their *official capacities* are essentially claims against the City Council. Because the City Council lacks the procedural capacity to sue or be sued, Councilpersons argue that they, in their official capacities, also lack procedural capacity to sue or be sued. Second, Councilpersons argue that they are entitled to absolute immunity or, in the alternative, qualified immunity. With regards to absolute immunity, Councilpersons claim that Plaintiffs are unable to sue them for any actions that constitute "legislative duties." As for qualified immunity, Councilpersons state that they are immune from liability for performing what they consider were discretionary functions. Councilpersons' third argument is that Louisiana Revised Statute § 9:2798.1[3] shields them from

---
[3] La. Rev. Stat. § 9:2798.1, in relevant part, provides:
  (B) Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the

3

Plaintiffs' state law claim because they were performing a discretionary act related to a legitimate government interest. Finally, Councilpersons argue that Plaintiffs failed to plead enough facts to survive a 12(b)(6) motion.

Plaintiffs contend that Councilpersons possess the procedural capacity to be sued in their official capacity even if the City Council itself does not have such capacity. Second, Plaintiffs argue that Defendants are not entitled to either absolute or qualified immunity because they have been named in their official, rather than individual, capacities. Third, Plaintiffs contend that Louisiana Revised Statute § 9:2798.1 is inapplicable because Defendants failed to justify the purposes of the multiple delays and procedural hurdles, which hindered development of the Port Marigny project. Finally, Plaintiffs contend that they have plead enough facts to survive a 12(b)(6) motion.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the

---

failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
(C) The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

4

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

**1. Procedural Capacity**

Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued. However, "[f]ederal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes" including motions raising a lack of capacity to sue or be sued. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 (3d ed. 2004). Furthermore, "[t]he Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued." *Angers ex rel. Angers v. Lafayette Consol. Gov't*, 07-0949, 2007 WL 2908805, at *1 (W.D. La. Oct. 3, 2007) (citing *Darby v. Pasadena Police Dep't,* 939 F.2d 311 (5th Cir. 1991) (affirming that Pasadena Police Department had no jural existence and therefore was properly dismissed from suit)). Therefore, the Court will consider Councilpersons' Rule 12(b)(6) motion based on a lack of capacity to be sued.

Federal Rule of Civil Procedure 17(b)(3) provides, in pertinent part, that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Under the Louisiana Civil Code, there are two kinds of persons that are capable of being sued: natural persons and

juridical persons.  *See* La. Civ. Code art. 24.[4]  Article 24 defines a natural person as "a human being" and a juridical person as "an entity to which the law attributes personality, such as a corporation or partnership." *Id.* Natural persons enjoy general legal capacity to have rights and duties, but juridical persons are "creature[s] of the law and by definition, [have] no more legal capacity than the law allows." *Angers ex rel. Angers v. Lafayette Consol. Gov't.*, 2007 WL 2908805, at *2 (citations omitted).  If a person is neither natural nor juridical, then it does not have procedural capacity to sue or be sued.  *See Roy v. Alexandria City Council*, 2007-1322, p. 4 (La. App. 3 Cir. 5/7/08), 984 So. 2d 191, 194.

Councilpersons contend that they lack the procedural capacity to be sued because a lawsuit against them in their official capacities is essentially a suit against the City Council as a whole.  In turn, because the City Council is not a juridical person with the capacity to be sued, Councilpersons argue that they also lack procedural capacity to be sued in this matter.  In response, Plaintiffs emphasize that they have sued the individual

---

[4] La. Civ. Code art. 24 provides:
> There are two kinds of persons: natural persons and juridical persons. A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

7

Councilpersons in his or her official capacity and not the City Council.

The parties cite to two cases from Louisiana's Third Circuit that address this issue, *City Council of Lafayette v. Bowen* and *Roy v. Alexandria City Council*. In *Bowen*, the Lafayette City Council filed suit against the Mayor of Lafayette alleging the improper use of public funds. 94-584, p. 2 (La. App. 3 Cir. 11/2/94), 649 So. 2d 611, 612. At issue was whether or not the City Council was a juridical entity with the capacity to sue or be sued. *Id*. at 613. The trial court concluded that the City Council was not a juridical person because the city's charter did not expressly grant the City Council the independent authority to sue or be sued. *Id*. In an attempt to cure the procedural defect, the City Council amended its complaint to add the council members in their official capacities as the plaintiffs. *Id*. at 614. On appeal, Louisiana's Third Circuit affirmed the trial court's determination that the amendment had no impact on the procedural deficiency. *Id*. at 616. The court stated:

> The trial court correctly concluded that naming the council members individually changed nothing. The plaintiff remained the City Council. The council members did not join the suit in their *individual capacities* as persons but, instead, in their *official capacities* as council members. The fact that, officially, the council members individually represent citizens and taxpayers does not change the fact that the City Council is the sole plaintiff. The amendment did not cure this procedural defect.

*Id.* (emphasis added). Thus, the court held that when considering procedural capacity, a suit against council members in their *official capacity* was equivalent to suing the City Council itself.

In their opposition, Plaintiffs cite to a later Louisiana Third Circuit case, *Roy v. Alexandria City Council,* to support their contention that the Councilpersons have procedural capacity. 2007-1332 (La. App. 3 Cir. 5/7/08), 984 So.2d 191. In *Roy*, the Mayor of Alexandria filed suit "against the City Council and its members *individually* who . . . voted to override the Mayor's veto" of a city ordinance. *Id*. at 193 (emphasis added). The Mayor sought a declaratory judgment that the city ordinance was invalid and also sought an injunction "against the City Council members, *individually*" from acting further on the ordinance. *Id*. (emphasis added). At issue was whether the City Council and the council members had procedural capacity to be sued. *Id*. at 194. Referencing *Bowen*, the Louisiana Third Circuit determined that the Alexandria City Charter did not grant the City Council the procedural capacity to sue or be sued. *Id.* at 194-95. The court did, however, allow "the five *individual* members" to be sued as they were natural persons as defined by La. Civ. Code art. 24. *Id*. at 195 (emphasis added). The court reasoned that "the injunctive relief sought by the Mayor, and granted by the trial court, was directed to the *individual* council members and it

9

restrained them from entering into an invalid contract on behalf of the City of Alexandria." *Id*. at 195 (emphasis added).

According to Plaintiffs, "while *Bowen* prevented suit against the City Council, *Roy* explained that a suit could be maintained against the individual city council members." (Rec. Doc. 12 at 5.) Plaintiffs' argument is flawed for two reasons. First, the *Bowen* court clearly and explicitly addressed the procedural capacity of the individual council members in their official capacities by stating that it was essentially the same as a suit brought by the City Council itself. Therefore, the *Bowen* decision did not just prevent suit against the City Council, it also prevented suit against the council members in their *official capacities*. *Id*. at 616 ("The council members did not join the suit in their individual capacities as persons but, instead, in their official capacities as council members . . . . The amendment did not cure this procedural defect."). Second, the *Roy* opinion is rather ambiguous for the present purpose because it fails to address whether the council members were named in their official or individual capacities, and relatedly, the impact such a distinction may have on procedural capacity in light of *Bowen*. The Court notes that while the *Roy* court thoroughly cited its earlier *Bowen* opinion when discussing the City Council's procedural capacity, it did not state that it was departing from *Bowen* when considering the procedural capacity of the council members. The

10

*Roy* court merely held that "the five individual members who were eventually left in the suit c[ould] be sued as they [we]re natural persons." *Id*. at 195. [5]

Other courts appear to follow a similar analysis as *Bowen* for cases that name individual members in their official capacities. For example, in *Turner v. Houma Municipal Fire & Police Civil Service Board*, the plaintiff filed suit against the Houma Municipal Fire and Police Civil Service Board as well as the Board members in their individual and official capacities. 99-152, 2001 WL 561992, at *1 (E.D. La. May 22, 2001). Defendants moved to dismiss or, alternatively, for summary judgment on the grounds that the Board and its members were not juridical entities capable of being sued. *Id*. The court first concluded that the Board was a juridical entity capable of being sued. *Id*. at *4. Turning to the Board members, the court noted that the only remaining claims against the Board members were in their official capacities. *Id*. Similar to *Bowen*, the court stated that "in an official capacity action, the Board and its members are analytically the same entity because

---

[5] As emphasized above, the *Roy* court repeatedly referred to the council members as *individuals* or that they were being sued *individually*. However, the opinion does not explicitly state whether the council members were sued in their official or individual capacities. The term "individual" or "individually" does not necessarily refer to individual capacity as courts often confusingly use the term even when discussing official capacity claims. For example, during the *Bowen* court's discussion on an amendment that named the council members in their official capacities, the court stated, "naming the council members *individually* changed nothing." 649 So. 2d at 616.

11

liability attaches to the municipality or like governmental entity." *Id*. (quoting *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 n.7 (5th Cir. 2000)). The court continued, "Thus, the claims are in essence claims against the Board. Because the Court has found that the Board can be sued, the Board members in their official capacities are also proper defendants." *Id*.

The Court also finds the Louisiana Supreme Court's opinion in *LeBlanc v. Thomas* instructive. 08-2869 (La. 10/20/09), 23 So. 3d 241. In that case, the plaintiffs amended the petition to name the Louisiana State University Health Sciences Center Chancellor in his official capacity as a defendant. In determining whether a particular venue statute applied, the court stated that "[o]fficial-capacity suits [] generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id*. at 246 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The court concluded that for the purposes of a venue analysis, adding the chancellor in his official capacity effectively added the board of supervisors as a defendant, thus, the venue statute was applicable. *Id*. ("We therefore conclude, based on our jurisprudence, that when Plaintiffs amended their petition and sued Dr. Hollier in his official capacity, they were really suing the LSU Board of Supervisors."); *see also Batiste v. Bonin*, 06-1352, 2007 WL 1791219, at *3 (W.D. La. June 13, 2007)

(holding that the Lafayette Police Department and thus its Chief of Police do not have the legal capacity to be sued); *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 909–10 (E.D. La. Apr. 12, 2001) (dismissing official capacity claims against a detective because claims against the city were defective); *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.").

Considering the aforementioned jurisprudence, the Court follows the *Bowen* analysis and finds that because this is an official-capacity action, the City Council and Councilpersons "are analytically the same entity." *Turner*, 2001 WL 561992 at *4 (citation omitted). As the *Bowen* court concluded, naming Councilpersons in their official capacity is merely another way of suing the City Council as a whole. Plaintiffs had the option of bringing suit against Councilpersons in their individual capacity – which would have cured any procedural defect – but did not do so. *See Bowen*, 649 So. 2d at 616 ("The council members did not join the suit in their individual capacities as persons but, instead, in their official capacities as council members."). Plaintiffs are clearly attempting to circumvent what would be a procedural deficiency if they were to name the City Council

itself,[6] and also any immunity that would potentially be available if they named the Councilpersons in their individual capacities.[7] In Plaintiffs' opposition briefing regarding immunity, they admit that suing the Councilpersons is the same as suing the City Council itself. *See* Rec. Doc. 12 at 9 ("In this case, Plaintiffs have filed suit against the Councilpersons in their official capacities. This suit represent[s] another way of pleading an action against an entity of which an officer is an agent." (citations omitted)). Ultimately, the Court finds that naming the Councilpersons in their official capacities is essentially a suit against the City Council.

As such, the Court must now determine whether the Mandeville City Council is a separate and legal juridical entity that has procedural capacity to sue or be sued. The Louisiana Supreme Court in *Roberts v. Sewage and Water Board of New Orleans* set forth an analysis for considering whether judicial persons in general may be sued. 92-2048 (La. 3/21/94), 634 So. 2d 341. The *Roberts* court stated:

> [T]he determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently

---

[6] Discussed in detail *infra* at 15.
[7] Plaintiffs state in their opposition to this motion that "because the Councilpersons have been named in their official, rather than individual, capacities, neither qualified nor absolute immunity is available." (Rec. Doc. 12 at 8.)

14

and not just as the agency or division of another governmental entity. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Id*. at 346-47.

"Louisiana courts have consistently held that city councils, parish sheriff's offices, and city permit offices are not separate government units with the capacity to sue or be sued." *Urban Hous. of Am., Inc. v. City of Shreveport*, 09-0317, 2013 WL 587894, at *4 (W.D. La. Feb. 13, 2013). The Louisiana Third Circuit in *Bowen* applied the *Roberts* analysis and determined that the City Council of Lafayette had no capacity to be sued. *See Bowen*, 649 So. 2d at 616 (the Lafayette "City Council is not *sui juris* or juridically independent of the City of Lafayette. It is not an entity to which the law attributes personality."). The court noted the city is governed by a Home Rule Charter, authorized by Article VI, section 4 of the Louisiana Constitution of 1974. *Id*. at 615. The court stated:

> The City Council is the legislative branch and governing authority of the City of Lafayette. As such, it is vested with all powers of the city except those which are otherwise provided by law or by the Charter. However, it is not "an additional and separate government unit" with the power to institute litigation on its own behalf. The City Council is a branch or part of the greater corporate body politic or juridical entity, the City of Lafayette. The Charter (organic law), which clearly grants the City Council broad powers, restricts the City Council's legal capacity to exercise such powers by establishing it as the legislative branch of the city government. In this capacity, the City Council may only exercise its powers as an agency or division of the greater city government.

15

*Id.* at 616. Lafayette's Home Rule Charter did not expressly or directly state that the City Council had independent authority to sue or be sued. *Id*. at 615.

In this case, the organic or creating authority is the Mandeville City Charter.[8] Subject to the Charter, the City is authorized "to exercise any power and perform any function necessary, requisite, or proper for the management of its local affairs." City of Mandeville Charter, § 1-1. Although the Charter grants the City Council broad powers, the Charter also expressly restricts the exercise of those powers by limiting the City Council's role to the legislative function. Like *Bowen*, the Mandeville City Charter is a "mayor-council" form of government meaning that the City Council serves as the legislative branch of the City government while the mayor is the head of the executive branch.[9] "In this capacity, the City Council may only exercise its

---

[8] Councilpersons failed to provide the Court with the City Charter of Mandeville. However, the Court has determined it may take judicial notice of the Charter as it is a publically available document. *See Batiste v. Bonin,* 06-1352, 2007 WL 1791219, at *3 n.4 (W.D. La. June 13, 2007) (taking judicial notice of Home Rule Charter for the Lafayette City-Parish Consolidated Government and determining that the Lafayette Police Department was not a juridical person, thus it and the Chief of Police lacked procedural capacity to be sued); *see also Matter of Waller Creed, Ltd.,* 867 F.2d 228, n.14 (5th Cir. 1989) ("Though the City ordinance was never introduced into the record, we take judicial notice of it. The power of a federal court to take judicial notice of legislative facts is less constrained than its power to take notice of adjudicative facts."); *Cinel v. Connick,* 15 F.3d 1338, n.6 (5th Cir. 1994) (When considering a 12(b)(6) motion, a court may refer to matters of public record without converting the motion into one for summary judgment.).
A copy of the City Charter of Mandeville may be obtained at https://library.municode.com/la/Mandeville/codes/code_of_ordinances.

[9] City of Mandeville Charter, § 1-2. – Form of government.
    The plan of government provided by this home rule charter shall be known as the "mayor-council" form of government. It shall consist

powers as an agency or division of the greater city government."
*Bowen,* 649 So. 2d. at 616. The Charter is also silent as to whether the City Council itself can independently sue or be sued, which courts have consistently considered as a factor against finding procedural capacity. *See id; see also Roy*, 984 So. 2d at 194; *U.L. Coleman Co. v. Bossier City-Par. Metro. Planning Comm'n*, 08-2011, 2009 WL 3518173, at *2 (W.D. La. Oct. 29, 2009) ("[T]he [Bossier] City Council is not an additional and/or separate governmental unit with the power to sue or be sued. Instead, it functions as a branch or part of the greater corporate body politic or juridical entity and does not possess the capacity to be sued."). Plaintiffs have failed to cite any legal authority that establishes the City Council as a separate, independent juridical entity capable of being sued. It is clear to the Court that the City Council was acting as a legislative agency for the City during the deliberation and subsequent denial of Plaintiffs' Port Marigny project development plan.

The Court finds that the Mandeville City Council is not a juridical entity with the procedural capacity to sue or be sued. The City Council is a "branch[] or part[] of the greater corporate body politic or juridical entity, *i.e.,* the city itself," and is

---

of an elected council which shall be called the Mandeville Council and shall constitute the legislative branch of the government and an elected mayor who shall be the chief executive officer and head of the executive branch.

not an independent or self-governing entity that possess the capacity to be sued. *See U.L. Coleman Co.*, 2009 WL 3518173, at *2. Plaintiffs emphasize that they have not named the City Council as a defendant. However, Plaintiffs' argument fails to acknowledge that naming the Councilpersons in their official capacities effectively has named the City Council, which does not have procedural capacity to be sued. Therefore, all claims against Councilpersons in their official capacities must be dismissed with prejudice.[10]

Because of the procedural deficiency, it is unnecessary for the Court to consider Councilpersons' remaining arguments in its motion to dismiss.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Councilpersons' *Rule 12(b)(6) Motion to Dismiss* **(Rec. Doc. 6)** is **GRANTED**.

New Orleans, Louisiana this 12th day of April, 2018.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiffs' claims against the City of Mandeville – which was not a party to the instant motion – may proceed.