**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PORT MARIGNY, LLC &** | * | **CIVIL ACTION NO. 2:17-CV-4727** |
| **PITTMAN ASSETS, LLC** | * | |
| | * | **HONORABLE JUDGE BARBIER** |
| **v.** | * | |
| | * | **MAGISTRATE JUDGE NORTH** |
| **CITY OF MANDEVILLE** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CONSENT JUDGMENT**

COME NOW, Plaintiffs, Port Marigny, LLC and Pittman Assets, LLC (collectively "Port Marigny," "Plaintiffs" or "PM Parties"), and Defendant, the City of Mandeville ("City" or "Defendant") (sometimes the Plaintiffs and the City are referred to as the "Parties") who submit this Consent Judgment.

## I.    Background

Located within the City is a large 76-acre tract of land known generally as the Pre-Stressed Concrete Site ("Site"). The current owner of the Site is Pittman Assets, L.L.C. Pittman Assets, L.L.C., or the members of Pittman Assets, L.L.C., have owned the Site since the early 1980s. The Site was heavily used for industrial purposes- manufacturing pre-stressed concrete bridge spans- most notably for use in the construction of the Lake Pontchartrain Causeway.[1] Multiple above and below ground structures were built on the Site for use in the manufacture of the concrete sections, as well as administrative and office structures.[2]

Since the late 1970's, except for remediation efforts, the Site has laid mostly dormant. The remediation efforts included, but were not limited to, extensive digging, removal of

---

[1] *See* photograph attached hereto as Exhibit 1 (in globo).

[2] *See id.*

buildings, removal of underground concrete, and removal of structures.[3]   Dirt/fill was also brought in to the Site to help partially level the Site following the concrete removal process.[4]

In 2009, the Mandeville City Council ("City Council") amended its Comprehensive Land Use Regulations Ordinance ("CLURO") in order to codify the "new urbanist design standards" identified in the Comprehensive Plan and make them applicable to the Site by passing Ordinance No. 09-14,[5] which was signed into law by the Mayor of Mandeville on June 26, 2009.  In Section 1 of Ordinance 09-14, the City Council "adopted as new Section 8.5 et seq." the "text in Appendix A . . . to establish standards for the creation of a Tradition[al] Neighborhood Development through the City's existing planned development review process."   The City Council, through Ordinance 09-14, established a defined set of parameters for a Traditional Neighborhood Development ("TND") and made them applicable to the Site.

In compliance with the City's Comprehensive Plan and the CLURO, the Plaintiffs' hired Architects Southwest (of which Mr. Steve Oubre, a nationally-recognized New Urbanism architect and land planner, is a member) to prepare a Master Plan & Guiding Principles ("Master Plan") plan for the Site's development to be known as "Port Marigny."   The Master Plan was submitted to the City's Planning and Zoning Commission ("P&Z") on July 1, 2015, as part of Pittman Assets, L.L.C.'s application for the development of the Site under the TND ordinance and in conformity with its existing PD zoning.[6]   The application was submitted by Pittman Assets, L.L.C., as the owner and Port Marigny, LLC, as the applicant.

---

[3] See id.

[4] See photograph attached hereto as Exhibit 2 (in globo).

[5] Entitled "An Ordinance Amending the Comprehensive Land Use Regulations Ordinance, including Sections 8.5 Traditional Neighborhood Development; Article 3 Definitions; 8.17 Supplemental Regulations for Recreational Vehicles; Supplemental Regulations for Boats; 9.1.1.12 Truck Parking in Residential Areas; 9.4 Open Space Regulations; 13.1.7 Public Uses and Open Space; and Providing for Other Matters in Connection therewith."

[6] Rec. Doc. No. 1 at ¶ 21.

On May 5, 2016, the P&Z unanimously adopted Resolution No. 16-01 that set forth a series of findings and thereafter made recommendations to the City Council on the proposed Port Marigny Development; namely, that Ordinance 15-17 be adopted, subject to certain conditions. Port Marigny maintains that it consented to all of the conditions recommended by the P&Z. On March 9, 2017, the City Council voted to deny Port Marigny's application. Port Marigny contends that the City Council voted to deny Port Marigny's application even though Port Marigny's application conformed in all material respects with the Comprehensive Plan and Section 8.5 of the CLURO.

On April 7, 2017, Plaintiffs filed suit against the City for multiple causes of action in state court in Louisiana, bringing its claims under federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party. The Plaintiff's lawsuit argues that the City of Mandeville's rejection of the Port Marigny development deprived the Site of any economically beneficial use, particularly because Port Marigny has no alternative right of use under the CLURO. The Plaintiff's further argued that the City of Mandeville's rejection of the Port Marigny development constitutes an unconstitutional taking requiring that Port Marigny be compensated to the full extent of their loss. Port Marigny also alleged causes of action for deprivation of rights because the arbitrary and capricious acts of the City violated Port Marigny's rights to property, substantive due process, procedural due process, and equal protection under the law.[7]

On May 5, 2017, the City filed a Notice of Removal to the Eastern District of Louisiana, which removed the case based on federal subject matter jurisdiction pursuant to 28 U.S.C. §

---

[7] Rec. Doc. No. 1-1.

1331 and asserted this Court has supplemental jurisdiction over other claims brought under Louisiana state law pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1441(c).[8]  The City answered the lawsuit and asserted that its denial of Port Marigny's application was within its constitutional and statutory rights to regulate the Site and that it had followed normal procedures for denying the application.  The City also argued that the Plaintiffs had no vested property rights which could have been taken.

On November 15, 2018, the City Council introduced and passed Ordinance No. 18-36.[9] The City has argued that Ordinance 18-36 moots or resolves any perceived issues with the zoning on the Site and provides the Plaintiffs with an approved use of the Site.[10] The Plaintiffs argue that Ordinance No. 18-36 should not apply to the Site for multiple reasons, including (a) it contains substantive changes to the zoning law that should not retroactively apply to the zoning law applicable to the Site in effect at the time the application was made on July 1, 2015 and in effect when this litigation was initiated; (b) it is unconstitutionally vague, especially when applied to the specific conditions at the Site; and (c) is a deprivation of Port Marigny's property and due process rights under the Fifth and Fourteenth Amendments.[11]

**AND NOW, COME THE PARTIES WHO SAY AS FOLLOWS:**

**Whereas**, after extensive fact-finding public hearings, the P&Z recommended to the City Council approval of Plaintiffs' application for the development of Port Marigny in accordance with the Master Plan and other exhibits that were submitted as part of the application;

---

[8] Rec. Doc. No. 1.

[9] Rec. Doc. No. 98 at ¶ 52.

[10] Rec. Doc. No. 99.

[11] Rec. Doc. No. 98.

**Whereas**, Plaintiffs have made serious allegations that the City's actions in rejecting the recommendation of approval by the P&Z were unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution and the Louisiana Constitution, as well as violated 42 U.S.C. § 1983;

**Whereas,** the City contends it has acted properly and within its authority and is not responsible for the Plaintiffs' significant damages and costs;

**Whereas**, the Plaintiffs have performed further Site engineering and architectural work during the litigation at the request of the City;

**Whereas,** an engineering study has shown that the development of the Site will not have an adverse drainage or flooding impact on surrounding properties;

**Whereas,** further review of the Site's historical and present conditions during the course of the litigation, including in-person site inspections, drone camera footage review of the Site, and review of historical photographs, show that the Site is a former industrial Site with unique property conditions;

**Whereas,** the Plaintiffs contend that the Site's unique land conditions have the potential to make application of certain portions of the CLURO to the Site subject to multiple and inconsistent interpretations;

**Whereas,** the Plaintiffs contend that certain portions of the CLURO and the specific provisions of the TND are vague and ambiguous, especially as the City has applied these provisions to the Site during the events set forth in the lawsuit;

**Whereas**, the Plaintiffs have alleged that the City Council has acted arbitrarily and capriciously in denying the Master Plan;

**Whereas,** the City vigorously contests the Plaintiffs' allegations;

**Whereas**, the Plaintiffs have agreed to amend its Master Plan for Development of Port Marigny to include the Conceptual Lot Layout Plan (the "CLLP") for Area 1 and for Area 2, attached hereto as Exhibit "A," which includes a reduction in density from the original Master Plan;

**Whereas,** the CLLP contains elements that were previously recommended for approval by P&Z and Area 2 reduces density in conformance with Ordinance No. 18-36;

**Whereas,** the CLLP contains revisions that the City deems comply with Section 8.5, entitled Traditional Neighborhood Development, of the CLURO and Ordinance No. 18-36 as applied to the Site and the City's consent to which will end the litigation and cure any of the City's alleged constitutional or statutory violations;

**Whereas,** Plaintiffs' civil engineers and land planners have prepared a Conceptual Cut and Fill Plan (attached as Exhibit "B") and cross sections showing the fill and building foundation profiles established in accordance with the Conceptual Cut and Fill Plan (attached as Exhibit "C");

**Whereas**, the City accepts Exhibits "B" and "C," for conceptual purposes, as being appropriate for the Site, and the City's consent to which will end the litigation and cure any of the City's alleged constitutional or statutory violations;

**Whereas,** experts engaged by the Plaintiffs have prepared Height Profiles, attached hereto as Exhibit "D," for the commercial buildings and apartments/condominiums to be constructed in the Neighborhood Center shown on the CLLP;

**Whereas,** this Site is a former industrial property with unique conditions and having varying contours of the land and the varying elevations of streets and roads, the City finds the Height Profiles set forth in Exhibit "D," for illustrative purposes, are appropriate for the Site,

6

subject to final approval by the City Planning and Zoning Commission at the time plans and specifications are presented to it for subdivision approval in accordance with formula set forth below, and the City's consent to which will end the litigation and cure any of the City's alleged constitutional or statutory violations;

**Whereas**, the City requires all development to be conducted in accordance with applicable state and federal environmental rules;

**Whereas,** in accordance with Ordinance No. 18-36, experts engaged by the Plaintiffs have updated the original Master Plan and Guiding Principles (now dated April 2, 2019) referenced above and now attached hereto as Exhibit "E";

**Whereas,** the Plaintiffs have presented an Environmental Assessment Program to be implemented in accordance with the plan prepared by BCI, dated October 19, 2016, attached hereto as Exhibit "F," which has already been presented to and accepted by the City;

**Whereas**, the Parties, cognizant of the risks inherent in litigation and after being able to conduct ample investigation concerning the facts of this matter, in recognition of the serious constitutional violations the Plaintiffs raise and in light of discussions among the Parties, further Site engineering work that has been performed during this litigation, the significant sums that the Plaintiffs have expended in a good faith attempt to satisfy the City's zoning requirements that were changed during the litigation, and the significant consequences to either side of an adverse judgment, the Parties, without admitting liability, hereby consent to the following:

1. The Parties agree that the land uses and intensities approved and authorized for Port Marigny are those land uses and intensities identified in Table 1, Section 2A of City of Mandeville Ordinance No. 18-36. The Parties further agree that the CLLP, attached as Exhibit "A" hereto, is accepted and approved, as the conceptual lot layout plan, by the

City as conforming with its zoning ordinances and regulations applicable to the Site without the necessity of any further approvals of the CLLP by P&Z. In accordance with Ordinance No. 18-36, the CLLP shall be at all times subject to: (a) minor amendments approved by the Planning Director, as defined in Section 8.5.1.3 of the CLURO and (b) major amendments by the Mandeville Planning and Zoning Commission, including the redesign of the lot layout, open space and streets/roads for Area 1 and/or Area 2, or any part thereof.

2.  Civil engineers and land planners engaged by the Plaintiffs have prepared a Conceptual Cut and Fill Plan (attached as Exhibit "B") and cross sections showing the fill and building foundation profiles established in accordance with the Conceptual Cut and Fill Plan (attached Exhibit "C") predicated on a Letter of Map Revision ("LOMR") being approved by the Federal Emergency Management Agency ("FEMA") revising the flood zones in the City. The City accepts the Conceptual Cut and Fill Plan (Exhibit "B") and the Cross Sections (Exhibit "C"), as the conceptual cut and fill plan and cross sections for the Site. The Plaintiffs shall obtain a Coastal Zone Management permit, and to the extent needed, a Section 404, Clean Water Act, permit before depositing and spreading any fill on the Site below five (5) feet MSL. The City Administration will not oppose the application by the Plaintiffs for these permits.

3.  The City has reviewed and approved the updated Master Plan and Guiding Principles attached hereto as Exhibit "E" as being in compliance with Section 8.5 of the CLURO, entitled Traditional Neighborhood Development, and Ordinance No. 18-36, subject to final approval of the CLLP (Exhibit "A") and Conceptual Cut and Fill Plan (Exhibit "B").

4.  The commercial buildings, mixed-use, and apartments/condominiums to be constructed in the Neighborhood Center (NC I and NC III) shown in the Master Plan and Guiding Principles (Exhibit "E") shall be in accordance with the Height Profiles prepared by Architects Southwest, attached hereto as Exhibit "D." Final approval of building design within the Neighborhood Center (NC I and NC III) will be given by the City Planning and Zoning Commission at the time plans and specifications are presented to it for consideration. Due to the varying contours of the land and the varying elevations of streets and roads, the height of a structure shall be measured in in accordance with the Urban Regulating Instructions of the Master Plan and Guiding Principles (Sheet 20, Exhibit "E"), as follows:

(a) NEIGHBORHOOD CENTER (Mixed-Use and Attached Multi-Family Residential in Master Plan Neighborhood Zones NC I and NC III):

Maximum building height of 48 feet. Alternatively, maximum building height of 65 feet may be allowed with Planning & Zoning Commission approval in accordance with Section 2(D)(iv) of Ordinance No. 18-36. Building height will be measured from the approved finished grade at the front entry to the point between the highest ridge and the primary eave.

(b) NEIGHBORHOOD GENERAL/EDGE (Alley Loaded Buildings in Neighborhood Zones NE I, NG I, NG II, NG III and NC II):

Maximum Building Height for a building accessed by an Alleyway shall be 35 feet from the approved centerline of the Alleyway to the point between the highest ridge and primary eave.

(c) NEIGHBORHOOD GENERAL/EDGE (Non-Alley Loaded Buildings in Neighborhood Zone NE II:

Where Alleys are not adjoining the lot and do not provide front or rear access to a building, and where the finished floor of the first floor living area is required to be elevated more than six feet above approved final grade to comply with FEMA regulations, the maximum building height shall be limited to 40 feet (2 ½ stories), measured from approved final grade to the point between the highest ridge and the primary eave.  Alternatively, maximum height of 45 feet may be allowed with Planning & Zoning Commission approval.

The Plaintiffs shall have the right to construct buildings to the maximum height of 65 feet in accordance with the provisions of Section 2D(iv) of Ordinance No. 18-36 if approved by the Planning and Zoning Commission.  For buildings and structures in Area 2, the plans for such buildings and structures may be submitted for approval when preliminary subdivision review and approval is requested or at any time thereafter.

5. Prior to commencing the grading and fill of the Site, the PM Parties shall conduct a Phase I and a Phase II Environmental Site Assessment of the Site in accordance with applicable local (the Mandeville City Ordinance), state (Louisiana Department of Environmental Quality ("LDEQ") rules and Risk Evaluation/Corrective Action Program ("RECAP") La. R.S. 30:2272 (Act 1092 of the 1995 Regular Session)) and federal laws (Federal Protection performing All Appropriate Inquiries ("AAI") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as regulations and standard real-estate practices for industrial property transaction guidelines in accordance with ASTM 1527-13.  The initial Phase II assessment process will mirror the State Program for RECAP on former industrial sites and under La. R.S. 30:2285-2290 Voluntary Remediation Program ("VRP") with the LDEQ and will follow

RECAP under LAC 33:I.Chapter 13 and other applicable regulations and standard practices for industrial sites slated for restoration/redevelopment for commercial and residential.  This shall be initiated prior to the removal of concrete, rebar, pilings and other such materials from the Site where Areas of Concern ("AOC") in accordance with state regulations are identified.  Environmental conditions observed during the execution of the Phase I and ongoing Phase II shall be addressed in accordance with the above and remediated when necessary with a pre-approved remediation plan by LDEQ and, if applicable, EPA, all as provided in Ordinance No. 18-36.  The procedure for inspection and remediation shall include the approved Environmental Assessment Program attached hereto as Exhibit "F."  The plan prepared by BCI, dated October 19, 2016, will be updated and developed into a working document that will encompass all environmental requirements necessary before, during and after site activities as the project moves forward.  If the requirement for further remediation is discovered before or during the construction of any phase of the PM development, remediation shall be conducted on the Site as required by law in accordance with a remediation plan approved by LDEQ and, if applicable, EPA.  After the Phase I and Phase II studies have been initiated, the City shall select an area on the Site that is suitable for the storage of fill and other construction materials.  The storage area shall be determined by the City engineers and environmental consultants.  Thereafter, the PM Parties may store fill dirt in the approved storage area until the P&Z approves a final Cut and Fill Plan for Port Marigny as a whole or a phase of Port Marigny, as requested by the PM Parties.  Once the P&Z has granted such approval or approvals, fill dirt may be moved from the storage site and spread at the

11

locations approved by P&Z.  During all phase of construction a site construction stormwater plan will be instituted along with any air quality dust protections.

6.  Application for Subdivision Approval will be made by the Plaintiffs in accordance with the procedure established in Article 11, Article 12 and Article 13 of the CLURO; except that the Tentative Review Procedure and Preliminary Review Procedure shall be combined into one procedure with the Conceptual Lot Layouts for Area 1 and Area 2 serving, respectively, as the Conceptual Sketch Plats required for Tentative Approval under Section 12.5.1.1 of the CLURO.  The requirement for a tree survey has already been satisfied, as a tree survey was included in Port Marigny's original application for a Conditional Use Permit.[12]  Article 8.2.1.1 of the CLURO, entitled "Cluster Residential Criteria," does not have application to buildings constructed in the Neighborhood Center. Consistent with Ordinance No. 18-36, the PM Parties will finalize and file the Covenants, Conditions and Restrictions ("CC&Rs") running with the Site at the time the Conceptual Lot Layout plans have been approved for Area 1 and Area 2 and final subdivision approval is granted for each phase of the PM development.  The CC&Rs may be modified by PM during the course of the development, as stated therein. The definitions contained in the Master Plan and the CC&Rs shall control.

7.  When considering an application from the Plaintiffs, the P&Z shall follow the procedure established by Article 4.3.3 of the CLURO as modified herein.  Consistent with the procedure established in Ordinance No. 18-36, the P&Z alone (the City Council having already provided the required precedent approvals in Ordinance No. 18-36) has the authority to: (a) further modify the Conceptual Lot Layout for Area 1 and Area 2 as

---

[12] *See* p. 27 of the original Master Plan and Guiding Principles prepared by ASW (dated June 25, 2015).

shown on the approved Exhibit "A"; (b) to further modify the Conceptual Fill Plan; (c) to grant subdivision Preliminary Plan Approval; (d) to grant Final Subdivision Plat approval; (e) to approve Major Amendments to the Conceptual Lot Layout plans and to the Preliminary Plans and Final Subdivision Plats; (f) further modification of the Master Plan and the CC&Rs; and (g) all other matters requiring City approval for the development of the Site to permit the development of the number/size of all Permitted Uses shown in Table 1 of Ordinance No. 18-36.

8.  As set forth in Ordinance No. 18-36, the City Council alone shall have the authority to (a) increase the Development Limits; (b) to reduce the Minimum Requirements, and (c) to add Authorized Land Uses to those approved in Table 1.  The City Council shall follow the procedural requirements set forth under Article 4.3.3 of the CLURO and apply the standards and requirements of Article 8.5 of the CLURO and the approved Master Plan when considering any Plaintiffs' request to increase the Development Limits, to reduce the Minimum Requirements, or to add Authorized Land Uses to those approved in Table 1.

9.  In further consideration of the modifications of the development plan as set forth herein, the City agrees that the PM Parties will not be financially responsible for any improvements to Monroe St., turning lanes and/or a roundabout at Monroe St. and East Causeway Blvd., other street improvements, acquiring right-of-way over property owned by parties other than the PM Parties to connect Mariner's Blvd. to Port Marigny, or the cost and expenses of extending Mariner's Blvd to connect with a street constructed to the western property line in Port Marigny by the PM Parties.  The foregoing notwithstanding, the PM Parties will be obligated to: (a) provide a street and right of way to a point on the

western boundary line of the Site to facilitate connection to Mariner's Village; (b) allocate a portion of the Open Space adjoining Monroe Street (an 11 ft. strip shown on the ASW Plan attached to the Ordinance as Exhibits 2 and 3) in the event the City decides to construct a turning lane into Port Marigny; and (c) allocate a portion of the Open Space at the intersection of Monroe Street and Messina Street (the triangular area shown on the ASW Plan attached to the Ordinance as Exhibits 2 and 3) in the event the City decides to construct a roundabout at that intersection.

10. With the consent and permission of the State of Louisiana, the PM Parties agree to develop and maintain the 1.4 acre parcel of land, designated "Park" on the CLLP, as a public park or civic space with public access through streets and walkways constructed by the PM Parties' on their property, subject to reasonable rules for use thereof applicable to the public and residents alike.  In the event the State does not consent and grant permission to the PM Parties to develop a Park on the 1.4 acre site, the PM Parties shall have no obligation to provide a Park or any other civic use for Port Marigny. Nevertheless, in the event the PM Parties do not develop a Park on the 1.4 acre site, the PM Parties agree to provide public access, as described above, to the 1.4 acre site at such time as the PM Parties complete construction of the infrastructure serving Area 2 of the subdivision.  In turn, the City accepts such public access as satisfying any requirement that the PM Parties have to provide a Park or other civic space as depicted on the CLLP and such public access satisfies any applicable acreage calculation under the CLURO.

11. The Parties agree that the interpretations contained in this Consent Judgment resolve the Plaintiffs' disputes over the CLURO being unconstitutionally vague, and therefore are binding on the Parties.  In addition, the Parties agree that the claims brought to date are

hereby resolved by the terms and conditions of this Consent Judgment stated herein.  The Parties, however, do not waive or release any causes of actions based on future conduct.

12. The Parties agree that, in light of the scope of the Port Marigny Development and the delays associated with the litigation, the Plaintiffs shall have 5 years from the date of the Court signing this Consent Judgment to obtain a building permit.  The Permitted Uses shall remain effective during this time period and any additional time period resulting from any litigation or prolonged approval process invoked by the City.

13. The Parties agree that as part of the Consent Judgment, the City's insurer will pay a certain sum of money as set forth in a separate letter agreement and as directed by the Plaintiffs' attorneys.  The City Administration also agrees to undertake additional efforts and commitments as detailed in the separate Memorandum of Understanding executed by the Parties and incorporated herein to this Consent Judgment.

14. The Parties agree that if any portion of this Consent Judgment is for any reason found or held to be illegal, invalid, or unenforceable under present or future laws, such portion shall be fully severable and such finding and/or holding shall not affect the legality, validity, of enforceability of the remaining portions of same.  In lieu of any such illegal, invalid, or unenforceable portion, a substitute or similar portion that is legal, valid, and enforceable shall be supplied by agreement of the Parties to which such severed portion pertains, to the extent possible.

15. The Parties agree that, subject to the Court's acceptance, the matters arising out of this lawsuit and addressed in this Consent Judgment shall remain under the supervision of the Court until all parties advise the Court that its supervision is no longer required.  Any conflicts concerning the interpretations, stipulations, and procedures for the development

of Port Marigny addressed in this Consent Judgment shall be submitted to the Court for

summary disposition.

Signed in New Orleans, Louisiana, this ___3rd___ day of April, 2019.

_____
HONORABLE CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

Respectfully Submitted By:

/s/Matthew M. Coman
JAMES M. GARNER #19589
MATTHEW M. COMAN, T.A., #23613
JACOB A. AIREY #27933
STUART D. KOTTLE #37194
**SHER, GARNER, CAHILL, RICHTER,**
**KLEIN & HILBERT, LLC**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone (504) 299-2100
Facsimile (504) 299-2300
mcoman@shergarner.com

**ATTORNEYS FOR PLAINTIFFS**
**PORT MARIGNY, LLC & PITTMAN**
**ASSETS, LLC**

/s/ Christopher Moody
CHRISTOPHER M. MOODY #9594
ALBERT D. GIRAUD #18911
**MOODY LAW FIRM**
1250 SW Railroad Street, Suite 170
Hammond, Louisiana 70403
Telephone: (985) 542-1351
Facsimile: (985) 542-1354
cmoody@cmoodylaw.com

/s/ Paul Harrison
Paul E. Harrison # 24447
C. deShea Richardson # 26487
**HARRISON & RICHARDSON**
532 Girod Street
Mandeville, Louisiana 70448
Telephone: (985) 727-7348
Facsimile: (985) 624-8145

/s/ Edward Deano
Edward J. Deano, Jr. #4770
**DEANO & DEANO**
532 Girod Street
Mandeville, Louisiana 70448
Telephone: (985) 626-1001

**ATTORNEYS FOR DEFENDANT**
**CITY OF MANDEVILLE**

On Behalf of Plaintiffs:

_____          4-02-2019
DR. MICHAEL N. PITTMAN                          DATE
Corporate Representative for Port Marigny, LLC and Pittman Assets, LLC


On Behalf of Defendant:

_____          8-02-19
THE HONORABLE DONALD J. VILLERE                 DATE
Mayor, City of Mandeville

17